■ In the Matter of the Estate of FRED A. ETOLL, SR., Deceased. FRED A. ETOLL, JR., as Executor of FRED A. ETOLL, SR., Deceased, Appellant; LEO WAGNER et al. Respondents. — Appeal from a decree of the Surrogate's Court of Albany County (Marinelli, S.), entered April 21, 1983, which surcharged the executor and ordered that he pay certain sums plus interest to respondents. ¶ Following a trial on the objections filed by respondents, the Surrogate found

that the executor had commingled funds, omitted estate assets from the accounting, improperly transferred or diverted estate assets, improvidently continued decedent's real estate business, improperly taken estate funds as management fees for operating the business and failed to marshall assets. The Surrogate further found that the executor's improper acts or omissions decreased the value of the estate's assets and thereby injured the objecting creditors. Accordingly, the executor was surcharged the amount owing to respondents, including interest. The executor appeals. ¶ The Surrogate's findings of improper acts or omissions by the executor are supported by the record. It is undisputed that the executor commingled estate funds with his own funds and those of the widow, which is improper notwithstanding his claim that he did so in good faith and with no intent to harm the estate (see EPTL 11-1.6, subd [a]). The executor concedes that he omitted certain assets from his accounting. There is no dispute that the executor transferred to his sister an automobile registered in the decedent's name. The executor contends that the automobile was his, for which there is no support except his belated claim, and that, in any event, the widow was entitled to an automobile by setoff, pursuant to EPTL 5-3.1 (subd [a], par [4]). However, the widow made no such claim; nor was that the basis for the transfer by the executor. ¶ The finding that the executor diverted estate assets arose out of the sale of decedent's accounting business. Before his death, decedent had entered into a contract with one Richard Caliendo for the sale of the business, requiring Caliendo to make a cash payment and monthly installments. After decedent's death, Caliendo refused to pay on the contract, alleging that decedent's former partners had taken most of the firm's clients. The executor thereafter entered into an agreement with Caliendo which required Caliendo to make monthly payments to decedent's widow. The executor contends that he did not divert estate assets, since the original agreement had called for Caliendo to make payments to decedent and "his heirs and assigns", making the proceeds of the contract the property of decedent's widow upon decedent's death. The executor's actions, however, were contrary to the argument he now makes. Thus, it was the executor, not decedent's widow, who negotiated and executed the subsequent contract with Caliendo. Moreover, Caliendo's note was listed as an estate asset and the executor sued Caliendo on the unpaid installments. Accordingly, the Surrogate's finding was supported by the evidence. ¶ At his death, decedent owned two thirds of the stock of a real estate business (the remainder of the stock was owned by his widow), the principal asset of which was an office and apartment building. The executor continued to operate the business for several years, despite the absence of any express authority to do so in the will and despite mounting losses. To keep the business running, the executor injected estate funds, as well as his own money and funds from the widow. These actions were improper (see *Matter of Muller,* 24 NY2d 336). Even if the executor had been authorized to continue the business and use estate funds for that purpose, his decision to do so, despite his awareness that the business was failing, was imprudent. During this period, the corporation's principal asset deteriorated and ultimately was lost in a foreclosure action, which the executor permitted without objection, despite the existence of a viable defense. For these services, the executor paid himself a management fee of some $18,000 out of estate funds. ¶ Evidence in the record reveals that the value of the estate's assets was substantially depleted after decedent's death. While it is difficult to calculate the exact amount of this loss attributable to the executor's improper actions, due largely to incomplete records, there is ample support for the Surrogate's conclusion that the loss for which the executor is responsible equals or exceeds the amount owing to the objectors. Accordingly, the decree should be affirmed. ¶ Decree affirmed, with costs. Main, J. P., Casey, Weiss, Levine and Harvey, JJ., concur.